UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────────────

ELOISE JACKSON,

                               Plaintiff,

                                                      5:15-CV-00894

v.

                                                      (GLS/TWD)

GEORGE EHGARTNER, SR., GEORGE
EHGARTNER, JR., KIM BREMERMAN,
BOB FERNANDEZ,

                               Defendants.
────────────────────────────────────────────────

APPEARANCES:

ELOISE JACKSON
Plaintiff, *pro se*
6112 Cobblestone Drive
Apt. G4
Cicero, New York 13039

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

      The Clerk has sent to the Court for review the *pro se* complaint in this employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. §2000e, *et seq*., and Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12111, *et seq*.  (Dkt. No. 1.)  Also before the Court is Plaintiff's second application for leave to proceed *in forma pauperis* ("IFP application").[1]  (Dkt. No. 5.)

---

[1] Plaintiff's initial IFP application was denied without prejudice as incomplete.  (Dkt. Nos. 2 and 4.)

## I.  IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's second IFP application, the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's second IFP application (Dkt. No. 5) is granted.

## II.  LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. PLAINTIFF'S COMPLAINT

The discrimination complaint filed by Plaintiff with the U.S. Equal Employment Opportunity Commission ("EEOC") identifies the employer against whom the complaint was made as Infitec, Inc. (Dkt. No. 1 at 6-8.) However, Plaintiff has not named Infitec as a defendant in this action, suing instead the owners/managers of her employer George Ehgartner, Sr., George Ehgartner, Jr., Kim Bremerman, and Bob Fernandez. (Dkt. No. 1 at 1.)

The facts set forth in the New York State Human Rights Division Charge of Discrimination, which is attached as a part of Plaintiff's complaint, state that in or about March 2013, after Defendant Bob Fernandez ("Fernandez") became Floor Manager at Infitec, she was subjected to undue scrutiny and discipline that co-workers did not face. *Id*. at 6. Further, each time she took a leave, he rearranged things so she had no idea what was going on when she returned. *Id.*

On or about November 25, 2013, Plaintiff submitted a note to her employer from her physician stating that she could not walk constantly for eight hours a day. Fernandez told her that was her job and refused to engage with her as to how to accommodate her disability. *Id*.

In or about March 2014, Plaintiff complained to Fernandez that she believed she was being discriminated against because of her disability and because of her race/black. *Id*. at 3, 6. She was called into a meeting with Defendants George Ehgartner, Sr., George Ehgartner, Jr., and Fernandez on March 10, 2014, and told she had made serious accusations and they had a problem with her complaint. *Id*. at 6. On or about March 31, 2014, Plaintiff was called into another

4

meeting and given an ultimatum that she sign a waiver that indicated she was not discriminated against or resign. *Id.* Plaintiff refused to sign the waiver and resigned. *Id.*

The EEOC sent Plaintiff a right-to-sue letter on April 28, 2015, *id.* at 9, and Plaintiff submitted her complaint to the Clerk for filing in a timely manner on July 22, 2015.[2] (Dkt. No. 1.)

**IV.    ANALYSIS**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim under Title VII, a plaintiff must plead a discrimination claim "that is facially plausible and . . . give[s] fair notice to the defendant of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (citation omitted); *see also Iqbal*, 556 U.S. at 678.

Plaintiff has sued the individual owners/mangers of Infitec but not her former employer Infitec. The Second Circuit has held that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individuals with supervisory control over a plaintiff may not be held personally liable under Title VII.")). Courts within the Second Circuit have extended this principle to

---

[2] Under Title VII, Plaintiff was required to file her lawsuit within ninety days of her receipt of the April 28 2015, EEOC right-to-sue letter. (Dkt. No. 1 at 9.) *See* 42 U.S.C. § 2000e-5(f)(1).

owners, concluding that owners are not "employers" under Title VII. *See McCain v. Buffalo Wild Wings*, No. 1:11-cv-143 (JGM), 2012 WL 298005, at * 4, 2012 U.S. Dist. LEXIS , 11778, at *10 (D. Vermont Feb. 1, 2012)[3] (collecting cases); *Harrison v. Lesort*, No. 09 Civ. 10188 (SHS), 2011 WL 744670, at * 2, 2011 U.S. Dist. LEXIS 20534, at * 6 (S.D.N.Y. Mar. 1, 2011) (defendant's alleged ownership interest in employer does not change the fact that because defendant is an individual he cannot be held liable under Title VII); *Joseph v. HDMJ Restaurant, Inc.*, 685 F. Supp. 2d 312, 318 (E.D.N.Y. 2009) ("the case law recognizes no [owner] exception to the individual liability doctrine").

Plaintiff has also asserted a claim under Title I of the ADA, which prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a disability discrimination claim under the ADA, a plaintiff must prove that: (1) defendant is subject to the ADA; (2) plaintiff was a person with a disability under the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his or her disability. *See Shannon v. New York City Transit Authority*, 332 F.3d 95, 99 (2d Cir. 1998). There is likewise no individual liability under Title I of the ADA. *See Fox v. State Univ. of N.Y.*, 497 F.Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I . . . of the ADA.")

---

[3] The Court will provide Plaintiff with a copy of the unpublished decision in accordance with the Second Circuit decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

In light of the foregoing, the Court recommends that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report-Recommendation within which to file an amended complaint naming her former employer Infitec, Inc. as defendant in this action. The Court further recommends that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed with prejudice as against Defendants George Ehgartner, Sr., George Ehgartner, Jr., Kim Bremerman, and Bob Fernandez whether or not Plaintiff has filed an amended complaint.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's second IFP application (Dkt. No. 5) is **GRANTED**; and it is

**RECOMMENDED**, that Plaintiff be granted leave to file an amended complaint naming Infitec, Inc. as defendant within thirty days from the filing of an order by the District Court on this Court's Report-Recommendation; and it is further

**RECOMMENDED**, that at the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed with prejudice against George Ehgartner, Sr., George Ehgartner, Jr., Kim Bremerman, and Bob Fernandez, regardless of whether or not Plaintiff has filed an amended complaint; and it is

**ORDERED**, that in the event Plaintiff files an amended complaint, the Clerk submit the amended complaint to this Court for initial review pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 4, 2015
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge



Not Reported in F.Supp.2d, 2011 WL 744670 (S.D.N.Y.)
**(Cite as: 2011 WL 744670 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
James Andrew HARRISON, Plaintiff,
v.
Frederick LESORT c/o Opia Restaurant Works, Defendant.

No. 09 Civ. 10188(SHS).
March 1, 2011.

*MEMORANDUM ORDER*
SIDNEY H. STEIN, District Judge.

***1** Plaintiff James Andrew **Harrison** brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.;* the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.;* and the New York State Human Rights Law on the ground that defendant Frederick **Lesort** terminated plaintiff's employment because of plaintiff's race and age.[FN1] Lesort has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Because individuals are not subject to liability under either Title VII or the ADEA, that motion is granted.

> FN1. The complaint lists the defendant as "Frederick Lesort c/o Opia Restaurant Works." However, plaintiff has clarified that he "never sought to sue Opia Restaurant" and that this suit is only "against Mr. Lesort himself." (Pl.'s Aff. in Opp. to Mot. dated Nov. 30, 2010 ("Pl.'s Opp.") at 2.)

**I. BACKGROUND**

Unless otherwise noted, the following facts are taken from the complaint, documents attached to it or incorporated by reference in it, and facts set forth in plaintiff's opposition papers. *See Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565–66 (2d Cir.2006); *Amofa v. Bronx–Lebanon Hosp. Ctr.,* 05 Civ. 9230, 2006 U.S. Dist. LEXIS 83199, at *6, 2006 WL 3316278 (S.D.N.Y. Nov. 13, 2006). They are accepted as true for the purposes of this motion. *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 154 (2d Cir.2006).

Harrison, a 44–year old African American, worked as a "stewardist" at two restaurants—Frederick's Downtown and Frederick's Lounge—in New York City. (Compl. at 2; Ex. C to Compl.[FN2]; Pl.'s Opp. at 2.) One day in May 2007, **Lesort**, owner of the restaurants, approached **Harrison** on the job and asked him "why is the place such a mess?" (Pl.'s Opp. at 2; Ex. C to Compl.) **Lesort** then asserted that he could "hire Mexicans to work at half [of **Harrison's**] salary" and added that "all you black guys like to do is listen to rap music." (Ex. C to Compl.) **Lesort** also stated that **Harrison** "was becoming too slack in [his] duties and responsibilities and asked if [ **Harrison**] was getting too old for [his] job." (*Id.*) Furthermore, **Lesort** accused **Harrison** of stealing alcohol from Frederick's Lounge. (Pl.'s Opp. at 2.)

> FN2. Harrison has attached five documents to the complaint: (a) a Right–to–Sue letter that he received from the Equal Opportunity Employment Commission ("EEOC"); (b) a letter from the EEOC's New York District Office; (c) his EEOC Charge of Discrimination; (d) his request to proceed *in forma pauperis;* and (e) a letter from the New York City Department of Labor. This opinion will refer to these documents as Exhibits A, B, C, D, and E to the complaint, respectively.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 744670 (S.D.N.Y.)
**(Cite as: 2011 WL 744670 (S.D.N.Y.))**

The day after this conversation, two New York City police detectives arrested Harrison for "allegedly stealing alcohol from [his] place of employment." (Ex. C to Compl.) In response, **Lesort** terminated **Harrison** and hired an Asian male who was less than 40–years old to fill **Harrison's** position. (*Id.*) It was later proven that plaintiff could not have stolen the alcohol because he was working in "another part of town at a different restaurant" at the time the theft occurred at Frederick's Lounge. (Pl.'s Opp. at 2; Ex. C to Compl.) Moreover, a video taken at Frederick's Lounge showed that a different employee—not Harrison—had stolen the alcohol. (Ex. C to Compl.) That employee was ultimately arrested and convicted of the theft. (*Id.;* Pl.'s Opp. at 2.)

On February 10, 2008, **Harrison** filed a charge of discrimination against **Lesort** and "Frederick Restaurant" with the EEOC. At plaintiff's request, the EEOC issued him a "Notice of Right to Sue," dated September 3, 2009. (Exs. A, B to Compl.) Plaintiff then commenced this action that same month.[FN3]

> [FN3]. Defendant argues that this action should be dismissed as time-barred because the complaint was filed on December 15, 2009, more than 90 days after Harrison received the Right–to–Sue Letter from the EEOC. However, an action is "treated as timely" where "in forma pauperis relief is granted" and "the complaint was received by the clerk's office prior to the expiration of the limitations period." Toliver v. Sullivan Cty., 841 F.2d 41, 42 (2d Cir.1988). Here, the *Pro Se* Office received plaintiff's request to proceed *in forma pauperis* along with a copy of the complaint on September 24, 2009, well within the 90–day time frame provided for by Title VII and the ADEA. *See* 42 U.S.C. § 2000e–5(f)(l); 29 U.S.C. § 626(e). Plaintiff's *in forma pauperis* request was granted on December 15, 2009. Accordingly, this action was timely filed.

**II. DISCUSSION**

A. *Legal Standard*

*2 Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief. Under Rule 12(b)(6), a court assumes the truth of facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network,* 458 F.3d at 154. Where, as here, a plaintiff proceeds *pro se,* the court construes the pleadings liberally, reading them to "raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999). This guidance applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). However, to survive a motion to dismiss, even a *pro se* plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

B. *Title VII and ADEA Claims*

**Harrison** has sued **Lesort** in his individual capacity pursuant to Title VII, which prohibits employment discrimination based on race, and the ADEA, which prohibits employment discrimination based on age. *See* 42 U.S.C. § 2000e–2(a)(l); 29 U.S.C. § 623(a). However, individuals are not subject to liability under either Title VII or the ADEA. *See Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000) (per curiam); Mabry v. Neighborhood Defender Serv., 10 Civ. 4016, 2011 U.S. Dist. LEXIS 10976, at *16, 2011 WL 335867 (S.D.N.Y. Jan. 28, 2011); Hargett v. Metro. Transit Auth., 552 F.Supp.2d 393, 407 (S.D.N.Y.2008); Cherry v. Toussaint, 01 Civ. 6726, 2002 U.S. Dist. LEXIS 2057, at *9–12, 2002 WL

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 744670 (S.D.N.Y.)
**(Cite as: 2011 WL 744670 (S.D.N.Y.))**

1270938 (S.D.N.Y. Feb. 8, 2002), *aff'd,* 50 Fed. Appx. 476 (2d Cir.2002). Defendant's alleged ownership interest in the restaurants that employed plaintiff—Frederick's Downtown and Frederick's Lounge—does not change the fact that because defendant is an individual he cannot be held liable under either statute. *See id.* at *3–4; *Joseph v. HDMJ Rest,* 685 F.Supp.2d 312, 317–18 (E.D.N.Y.2009). Accordingly, the Court dismisses plaintiff's Title VII and ADEA claims.

C. *New York State Human Rights Law Claim*

Having dismissed plaintiff's federal claims, this Court declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. 1367(c)(3); *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988). Accordingly, that New York State Human Rights Law claim is dismissed without prejudice to plaintiff asserting it in state court.

**III. CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss the complaint (Dkt. No. 9) is granted.

SO ORDERED:

S.D.N.Y.,2011.
Harrison v. Lesort
Not Reported in F.Supp.2d, 2011 WL 744670 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**


Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Zack McCAIN, Plaintiff,
v.
BUFFALO WILD WINGS, Jan Company/Burger King, Martti Matheson, Eric Felkowski, Matt Cunningham, Defendants.

No. 1:11–cv–143.
Feb. 1, 2012.

Zack McCain, Burlington, VT, pro se.

Robert G. Cain, Paul Frank Collins PC, Burlington, VT, Donald W. Goodrich, Esq., Donovan & O'Connor, LLP, Bennington, VT, Robert K. Taylor, Esq., Partridge Snow & Hahn LLP, Providence, RI, for Defendants.

*OPINION AND ORDER*
J. GARVAN MURTHA, District Judge.

**\*1** Plaintiff Zack McCain, proceeding *pro se,* brings this action claiming he was twice the victim of employment discrimination. Defendants Martti Matheson and Jan Company/Burger King (hereinafter "Burger King") have each filed motions to dismiss for failure to state a claim. (Docs.12, 14.) Also pending before the Court are McCain's motion for appointment of counsel and motion to amend his complaint. (Docs.3, 25.) For the reasons set forth below, Matheson's motion to dismiss is GRANTED in part and DENIED in part, Burger King's motion to dismiss is DENIED, and McCain's motions are DENIED.

*Factual Background*

McCain, who is African–American, alleges he has been the victim of two separate instances of discrimination. The first allegedly occurred while he was seeking employment at a Buffalo Wild Wings restaurant in Burlington, Vermont. In response to the restaurant's hiring advertisement, McCain allegedly filed two work applications, one with General Manager Eric Felkowski and one with kitchen manager Matt Cunningham. In each application, he explained that he could work as either a dishwasher or a "prep cook."

McCain reports that shortly after submitting his applications, he received a cell phone message from a Buffalo Wild Wings employee seeking to schedule an interview. When he returned the call, however, he was allegedly informed by a female employee that there was no longer a position. On May 15, 2010, McCain contacted Felkowski, who informed him that over 100 positions had been filled, that he "was going to see how things work out with them," and that McCain should "give him a call in about a month or so, and he would try and get him in." (Doc. 5 at 3.)

McCain claims that he waited as advised, then tried to reach Felkowski by phone. After several unsuccessful attempts, he traveled to the Buffalo Wild Wings restaurant and spoke with Cunningham, who informed McCain that there were no prep cook openings. When McCain asked about a dishwashing position, Cunningham allegedly responded:

> You can't even apply for that position. They got a foreign exchange program, and those guys back there, can't even speak English, and I see you can speak English clearly. So you won't be able to understand them. It wasn't my idea anyhow, it was [Felkowski]'s. So you can't even apply for that position, and we have nothing else open, sorry, if something come[s] open, I'll call you.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

(*Id.* at 4.)

McCain never received a call from Cunningham. On June 26, 2010, he filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming Buffalo Wild Wings was engaged in discriminatory hiring practices "on the bases of either his national origin or race." (*Id.* at 5.) Buffalo Wild Wings did not respond to the charge, despite reportedly being contacted by the EEOC on three separate occasions. (Doc. 5–1 at 1.) McCain was contacted directly, however, by Defendant Martti Matheson, who allegedly stated "he didn't see how [Buffalo Wild Wings] was discriminating when they had hired African Sudan[ ]s (African Immigrants), and that he was a foreigner himself." (Doc. 5 at 5.) The EEOC subsequently issued a Notice of Right to Sue, finding "reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge...." (Doc. 5–2 at 1.) McCain reports both Cunningham and Felkowski are no longer employed by Buffalo Wild Wings. (Doc. 5 at 8.)

**\*2** In January 2011, McCain applied for work at a Burger King restaurant in Colchester, Vermont. The Assistant Manager contacted McCain and set up an interview with the restaurant's Store Manager, Sheila. Sheila allegedly offered McCain a position as a night porter for three days a week. McCain claims the other night porter, who was white, "would be on for 4 days." (*Id.* at 6.) He also alleges Burger King "failed to adhere to their promise, and gave plaintiff 2 days a week, instead [of] 3 days." (*Id.*)

The Complaint claims in March 2011, Burger King "discontinued their contract" with the other night porter. As a replacement, the restaurant allegedly hired "Donnie Gordon, white male, over 40 ... and gave him 3 days to work, as opposed to 2 days, as [Burger King] had initially given to the plaintiff when he had started working." (*Id.* at 7.) The Complaint also claims that although the first night porter was given an employment contract, Burger King ignored McCain's request for a contract. (*Id.*)

McCain complained to Store Manager Sheila that sixteen hours of work per week was not sufficient for him to meet his living expenses. When he asked why the other night porter was given three days of work, and he only two, Sheila reportedly responded that "they didn't want to be left without [a] porter." (*Id.*) McCain asserts Sheila's conduct not only violated his right to "make and enforce contracts" under 42 U.S.C. § 1981, but also constituted retaliation against him based upon the fact that his wages were being withheld by the State of Vermont pursuant to a child support enforcement order. (*Id.* at 7–9.)

In May 2011, an Assistant Manager from a different Burger King location, Mike, came to the Colchester restaurant to "cover for another Manager." (*Id.* at 8.) Mike allegedly proceeded to criticize McCain's job performance, and "made unwelcoming jokes to the plaintiff about black men being with white women, but never commented about black women being with white men." (*Id.*)

McCain asserts an array of legal claims against the Defendants, including: race and national origin discrimination in violation of 42 U.S.C. § 1985(3) and Title VII of the Civil Rights Act of 1964; refusal to allow him to enter into a contract, in violation of 42 U.S.C. § 1981; violation of the Equal Protection, Due Process, and Privileges and Immunities Clauses; violation of his constitutional right to travel; and violation of Vermont anti-discrimination law, specifically 21 V.S.A. § 495(a)(1). For relief, he asks the Court to enjoin Buffalo Wild Wings and its employees from continuing its allegedly discriminatory practices, to issue a declaratory judgment stating that Defendants have acted unlawfully, and to award him compensatory and punitive damages.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

*Discussion*

I. *Motions to Dismiss*

Pending before the Court are two motions to dismiss filed by Martti Matheson and Burger King, respectively. Both motions are filed pursuant to Fed.R.Civ.P. 12(b)(6) and test the legal rather than the factual sufficiency of McCain's Complaint. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Accordingly, the Court must accept the factual allegations in the Complaint as true, *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007), and draw all reasonable inferences in McCain's favor. *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995).

**\*3** The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). The standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleadings drafted by a *pro se* party must be liberally construed. *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir.2006).

A. *Martti Matheson*

The first dispositive motion before the Court is that of Defendant Martti Matheson. Matheson is alleged to have communicated directly with McCain on behalf of Buffalo Wild Wings after McCain filed his EEOC charge. Matheson addresses that specific claim as well as the broader claims against Buffalo Wild Wings, arguing that the allegations in the Complaint "can only be fairly construed as a claim based on reverse national origin discrimination." (Doc. 12 at 2.)

The Complaint asserts claims of both racial and national origin discrimination. Specifically, McCain asserts Defendants violated 42 U.S.C. § 1981(b) by denying him the right to make and enforce contracts while entering into contracts with "white or foreign applicants." (Doc. 5 at 9.) He next claims that by failing to respond to the EEOC's inquiries, Defendants effectively conspired against him "with class based animosity for being African American" and for his "inability to speak any other language besides English." (*Id.* at 10.) Third, he claims Defendants violated Title VII by "segregating or classifying the dish washing position exclusively for only foreigners," thus discriminating on the basis of "the plaintiff['s] race, Black or national origin, American...." (*Id.* at 11–12.) Finally, he claims Defendants violated a state anti-discrimination statute. (*Id.* at 12.)

Nonetheless, Matheson contends the facts asserted in the Complaint, at least with respect to Buffalo Wild Wings, encompass only discrimination on the basis of national origin, and not race. This contention is supported by even a liberal reading of the Complaint. The fundamental allegation against Buffalo Wild Wings and its agents is that McCain was declined employment because he speaks English. According to the statements by Matt Cunningham, the restaurant was operating either a formal or informal "foreign exchange" program and was hiring only foreign, non-English speaking workers as dishwashers. (*Id.* at 5.) Furthermore, in Matheson's alleged communication with McCain, he informed McCain the restaurant had been hiring African immigrants workers, thus dispelling the possibility that race was a factor in the hiring process. (*Id.* at 4.)

**\*4** In response to the motion to dismiss, McCain argues that race and national origin "overlap" and may be considered "interchangeable" under the law. (Doc. 22 at 6.) That contention is misplaced with respect to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

claims brought under 42 U.S.C. § 1981, as the Second Circuit has established that § 1981 prohibits discrimination on the basis of race, but not national origin. *See Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998) ("It is settled that Section 1981 does not prohibit discrimination on the basis of ... national origin.") (citing *Saint Francis Coll. v.. Al–Khazraji,* 481 U.S. 604, 613 (1987)). Accordingly, to the extent McCain is asserting a § 1981 claim against Matheson, that claim is DISMISSED.

Matheson next argues McCain's Title VII claims must fail because such claims cannot be brought against supervisors, managers, employees or, in Matheson's case, owners. It is plain that an employer's agents or employees may not be held individually liable under Title VII. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995), *abrogated* on *other grounds by Burlington Indus. v. Ellerth,* 524 U.S. 742 (1998). Even more broadly, the Second Circuit has held that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000); *see also Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004); *Mandell v. County of Suffolk,* 316 F.3d 368, 377 (2d Cir.2003). Courts within this Circuit have extended have extended this principle to owners, concluding that owners are not "employers" under Title VII. *Joseph v. HDMJ Restaurant, Inc.,* 685 F.Supp.2d 312, 318 (E.D.N.Y.2009) ("the law recognizes no [owner] exception to the individual liability doctrine"); *see also Velasquez v. Mirv Coffee, Inc.,* 1996 WL 706910, *1 (S.D.N.Y. Dec. 6, 1996) (rejecting claims that business owners qualify as "employers" under Title VII); *Leykis v. NYP Holdings, Inc.,* 899 F.Supp. 986, 990 (E.D.N.Y.1995) (same). The Title VII claims brought against Matheson are therefore DISMISSED.

Matheson further argues McCain's conspiracy claim under 42 U.S.C. § 1985(3) is barred because that statute does not provide a cause of action for conspiracies to violate Title VII. Matheson's position is well supported by the case law. *See, e.g., Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 378 (1979); *Gutierrez v. City of New York,* 756 F.Supp.2d 491, 516 (S.D.N.Y.2010).

To the extent McCain is alleging conspiracies to violate various constitutional provisions, his claims lack factual support. The Complaint alleges Defendants conspired to deprive McCain of a host of constitutional rights, including his rights to due process and equal protection, but does so only in speculative and conclusory fashion. To state a claim under § 1985(3), McCain must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

**\*5** *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). To successfully plead such a conspiracy, he must " 'provide some factual basis supporting a meeting of the minds such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " *Arar v. Ashcroft,* 585 F .3d 559, 569 (2d Cir.2009) (quoting *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003)); *see Emmerling v. Town of Richmond,* 434 F. App'x 10, 12 (2d Cir.2011) (affirming dismissal of plaintiff's § 1985(3) claim because plaintiff "provided only vague and conclusory allegations of conspiracy").

McCain alleges that

defendants [Buffalo Wild Wings], Felkowski, Matheson, and Cunningham, entered into a conspiracy to deprive the plaintiff, a member of a protected class, of the privileges, and immunities, that are accorded to him, and the class, and other citizens

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

throughout the several states, under Article IV, Section 2, Clause 1, and alone with his right to Travel, a corollary right under this National Citizenship status, protected under the 5th, 14th Amendments to the U.S. Constitution, with a class based discriminatory animosity towards the plaintiff and class, from their inability to speak different languages, or for being Black, and born in the United States, couple[d] with committing overt act [s] to further the conspiracy, by either quitting their jobs, thereafter, or constructively being discharge[d] there from, as a[n] attempt to conceal evidence, or thwart the Court of personal jurisdiction over them personally, to further the conspiracy main objective as [a] result, directly violated the deprivation clause, of Title 42 U.S.C. Section (3) of 1985.

(Doc. 5 at 10–11.) These allegations offer no factual support for a meeting of the minds, and only speculation as to why Felkowski and Cunningham may have left their employment at Buffalo Wild Wings. Such claims of conspiracy are insufficient, and are therefore DISMISSED.

Matheson's final argument is that, if all federal claims against him are dismissed, the Court should decline to exercise supplemental jurisdiction over McCain's state law claim. The supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(3), provides that a district court may decline to exercise jurisdiction over state law claims when the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the Court has not dismissed "all claims over which it has original jurisdiction," as there are still federal claims pending against other Defendants (including non-moving Defendants). The Court therefore declines to dismiss the state law claim against Matheson at this time. *See Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.,* 789 F.Supp.2d 1029, 1059 (N.D.Iowa 2011) (citing *Winegarner v. City of Coppell,* 2006 WL 2485847, at *10 (N.D.Tex. Aug. 28, 2006) (noting the "all claims" language in § 1367(c)(3) and declining to dismiss plaintiff's state law claims against moving defendants because federal claims were still pending against other defendants)); *see also, e.g., DeFazio v. Wallis,* 500 F.Supp.2d 197, 210–11 (E.D.N.Y.2007).

B. *Burger King*

**\*6** The second motion to dismiss is submitted by Burger King. McCain's sole legal claim against Burger King is under 42 U.S.C. § 1981, which provides a remedy "against private actors who intentionally discriminate on the basis of race or ethnicity." *Bologna v. Allstate Ins. Co.,* 138 F.Supp.2d 310, 322 (E.D.N.Y .2001); *see Runyon v. McCrary,* 427 U.S. 160, 168–75 (1976); *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988). To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the statutorily enumerated activities. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993), *cert. denied,* 516 U.S. 824 (1995). The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).

Burger King argues the Complaint does not allege facts to support either intentional discrimination or discrimination concerning an enumerated activity. (Doc. 14–1 at 3.) Burger King focuses its argument first on McCain's claim that he was provided fewer days of work than his white co-workers. The motion to dismiss contends "the complaint admits that [the work schedule] was because [McCain] was walking to work from South Burlington, not because of an intent to discriminate." (*Id.*)

While the Complaint makes reference to the fact that McCain walked to work from South Burlington, it

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

does not concede his commute was the reason he received fewer work hours. The Complaint states, in relevant part, that McCain received "2 days a week, instead [of] 3 days, as he walked from the University Inn Motel, in South Burlington, where the rooms were being discounted ... to prevent homelessness, during the cold winter months in Vermont, to [Burger King] in Colchester." (Doc. 5 at 6.) The Complaint also alleges McCain received fewer work hours than two white co-workers. (*Id.* at 5–6). Giving McCain's *pro se* Complaint the required liberal reading, and drawing all reasonable inferences in his favor, the Court finds the phrase "as he walked from ... South Burlington" does not explain the difference in treatment, and that reading the Complaint as a whole, McCain is instead asserting a claim of differential treatment on the basis of race.

Burger King also seeks dismissal on the ground that "alleged jokes on a single day by a visiting assistant manager are insufficient to establish a hostile work environment...." (*Id*. at 3.) It is not clear, however, that the Complaint is alleging a hostile work environment. What is clear from the Complaint is McCain believes he has a § 1981 claim based upon Burger King's refusal to "make and enforce" a contract due to his race. (Doc. 5 at 7, 9.) Specifically, he claims a white worker was allowed to enter into an employment contract, but his own request for such a contract was ignored. (*Id.* at 7.) Burger King's motion does not address this claim.

**\*7** In sum, the allegations against Burger King include, but may not be limited to, a refusal to provide equal work opportunities and a refusal to enter into an employment contract, both on the basis of race. Burger King's first argument—that the Complaint sets forth a non-discriminatory reason for McCain's work schedule—is unpersuasive. Burger King does not address the employment contract issue. Accordingly, Burger King's motion to dismiss is DENIED.

II. *Motion to Amend Complaint*

Also before the Court is McCain's motion to amend his Complaint. The standard for such a motion is that leave to amend is "freely" given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Nonetheless, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200–01 (2d Cir.2007). Both Matheson and Burger King oppose the motion, arguing the proposed amendments are futile.

With respect to Matheson, the Court agrees the new allegations in the proposed Amended Complaint are futile. The Amended Complaint brings no new legal claims against Matheson. Instead, it supplements McCain's previous claims of a conspiracy. The new claims, however, are no less conclusory or speculative than those presented previously.

McCain first alleges Matheson knew about the EEOC charge, and "made a tacit agreement with [Buffalo Wild Wings], and others, to not respond thereto." (Doc. 25–4 at 7.) This claim merely echoes the legal requirement that a conspiracy claim include an "agreement, express or tacit, to achieve the unlawful end.' " *Arar,* 585 F.3d at 569. McCain provides no underlying facts to support his claim, *see id.,* and the proposed amendment is therefore futile.

McCain further alleges Matheson and others at Buffalo Wild Wings conspired "for the purpose of preventing or hindering the United States Marshal Service from securing personal jurisdiction over defendant Cunningham, and Felkowski...." (Doc. 25–4 at 14.) This allegation presumably relates to the fact that Cunningham and Felkowski are no longer employed at Buffalo Wild Wings. The claim is similar to McCain's previous contention that Cunningham and Felkowski may have quit their jobs in order to frustrate personal jurisdiction. As before, these claims are conclusory, speculative, and without factual support. The motion to amend the claims against Matheson is

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

therefore DENIED.

The Amended Complaint also adds three new legal claims, each of which alleges wrongdoing by Burger King. The first contends that, in its motion to dismiss, Burger King admits to "discriminating against the plaintiff in the distribution of work hours to him, because of his fundamental rights to movement, or intra-state travel...." (Doc. 25–4 at 16.) McCain further contends this discrimination "on grounds of him exercising his fundamental and guaranteed rights to freedom of movement" violated his right to equal protection. (*Id.* at 17.) Neither claim is plausible.

**\*8** The right to travel from one place to another free of hindrances is a well established aspect of constitutionally protected private freedom. *See Kolender v. Lawson,* 461 U.S. 352, 358 (1983). The Second Circuit has clarified this right "protects *movement between places* and has no bearing on *access* to a particular place." *Williams v. Town of Greenburgh,* 535 F.3d 71, 75 (2d Cir.2008) (emphasis in original). McCain alleges Burger King denied him access to certain work hours; he does not claim Burger King impaired his movement between places. Indeed, nothing in the alleged conduct of Burger King employees hindered McCain's "freedom of movement." *Betancourt v. Bloomberg,* 448 F.3d 547, 553 (2d Cir.2006).

Furthermore, with respect to McCain's equal protection claim, the Fourteenth Amendment's Equal Protection Clause applies only to state actors, and Burger King is a private employer. *See Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 257 (2009) ("The Equal Protection Clause reaches only state actors"); *Zaidi v. Amerada Hess Corp.,* 723 F.Supp.2d 506, 518 n. 3 (E.D.N.Y.2010) ("[T]he Equal Protection Clause of the Fourteenth Amendment can provide a vehicle for an employment discrimination claim .... only where the defendant employer is a state actor, and not where, as here, the employer is a private entity."). These proposed amendments to the Complaint are therefore DENIED as futile.

McCain's third proposed legal claim is brought under the United Nations' Universal Declaration of Human Rights ("UDHR"). The UDHR, however, is "merely aspirational and [was] never intended to be binding on member States of the United Nations." *Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 259 n. 36 (2d Cir.2003); *see also Guaylupo–Moya v. Gonzalez,* 423 F.3d 121, 133 (2d Cir.2005). The claim thus provides no cause of action.

Other proposed changes to the Complaint include additional factual allegations against Burger King. Because Burger King's current motion to dismiss is denied, McCain suffers no prejudice if the Court bars his additional factual allegations at this time. If McCain wishes to submit another, red-lined proposed Amended Complaint that does not include the futile claims discussed above, along with a motion to amend, the Court will consider additional claims and allegations at that time. His current motion, however, is DENIED without prejudice.

III. *Motion for Appointment of Counsel*

The final motion before the Court is McCain's motion for appointment of counsel. A federal judge has "broad discretion" when deciding whether to appoint counsel to an indigent litigant. *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986); *see Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994). "There is no requirement that an indigent litigant be appointed *pro bono* counsel in civil matters." *Burgos,* 14 F.3d at 789; 28 U.S.C. § 1915(e) (formerly 28 U.S.C. § 1915(d)). Indeed, appointment of *pro bono* counsel must be done judiciously in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172–73 (2d Cir.1989).

**\*9** When deciding whether to assign counsel to an

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)
**(Cite as: 2012 WL 298005 (D.Vt.))**

indigent civil litigant, the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. *Johnston v. Maha,* 606 F.3d 39, 41 (2d Cir.2010) (quoting *Cooper,* 877 F.2d at 174); *see also Leftridge v. Conn. State Trooper Officer No. 1283,* 640 F.3d 62, 68–69 (2d Cir.2011); *Hodge,* 802 F.2d at 61. "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001). If the Court finds the plaintiff's claim is of substance, it should next consider the following factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge,* 802 F.2d at 61–62; *see also Carmona,* 243 F.3d at 632. These factors are not restrictive, and "[e]ach case must be decided on its own facts." *Hodge,* 802 F.2d at 61.

Here, it is not clear whether McCain's claims against the remaining Defendants have sufficient merit to warrant the appointment of counsel. Even assuming such merit, however, the Court will not appoint counsel at this time. McCain has not demonstrated that he will be unable to investigate the critical facts of the case. Nor has he shown that conflicting evidence will require expert cross-examination. McCain's extensive pleadings show he is able to thoroughly present his claims, and the legal issues, thus far, do not appear to be particularly complex. Finally, the Court sees no reason why appointment of counsel will be more likely to lead to a just determination. The motion for appointment of counsel is therefore DENIED.

*Conclusion*

For the reasons set forth above, Matheson's motion to dismiss (Doc. 12) is GRANTED with respect to all federal claims, and DENIED with respect to McCain's state law claim. Burger King's motion to dismiss (Doc. 14) is DENIED. McCain's motion to amend/supplement the Complaint (Doc. 25) is DENIED without prejudice. If the plaintiff wishes, he may submit another motion to amend, together with a red-lined version of a proposed Amended Complaint that (1) does not allege the claims the Court has found futile, and (2) clearly designates additions and deletions. A non-redlined reproduction of the the Amended Complaint must also be submitted. McCain's motion for appointment of counsel (Doc. 3) is DENIED.

SO ORDERED.

D.Vt.,2012.
McCain v. Buffalo Wild Wings
Not Reported in F.Supp.2d, 2012 WL 298005 (D.Vt.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.