UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELOISE JACKSON,

      Plaintiff,     5:15-cv-894
               (GLS/TWD)

    v.

INFITEC, INC.,

      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of K. Felicia Davis | K. FELICIA DAVIS, ESQ. |
| P.O. Box 591 | |
| Syracuse, NY 13201 | |
| **FOR THE DEFENDANT:** | |
| Mackenzie Hughes LLP | CHRISTIAN P. JONES, ESQ. |
| 101 South Salina Street | |
| Suite 600 | |
| Syracuse, NY 13202 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Eloise Jackson brings claims under Title VII of the Civil

Rights Act[1] and the Americans with Disabilities Act (ADA)[2] against her former employer, Infitec, Inc. (Am. Compl., Dkt. No. 9.) Pending is Infitec's motion for summary judgment. (Dkt. No. 74.) Also pending is Jackson's motion for leave to file a second amended complaint.[3] (Dkt. No. 79.) For the reasons that follow, Infitec's motion for summary judgment is granted, and Jackson's motion for leave to amend is denied.

## II. Background

### A. Facts[4]

In August 2011, Jackson was working at Infitec, "a company that designs and manufactures a wide variety of industrial timing controls." (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 16, Dkt. No. 74, Attach. 22.) "Her responsibilities included supervising and coordinating the activities of production employees engaged in assembling parts or

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] *See* 42 U.S.C. §§ 12101-213.

[3] It appears there is confusion as to the labeling of Jackson's complaints. On September 22, 2015, Jackson filed an amended complaint, (Dkt. No. 7), which was stricken by the court on December 7, 2015, (Dkt. No. 8). Jackson then filed another amended complaint, the operative pleading, on January 4, 2016, and mislabeled it as a "second amended complaint," (Dkt. No. 9). To clarify, the operative pleading is Jackson's first "amended complaint," and thus, the pending motion currently mislabeled as a "third motion to amend/correct," (Dkt. No. 79), is a motion for leave to file a second amended complaint.

[4] Unless otherwise noted, the facts are undisputed.

assemblies into units." (*Id.* ¶ 16.)

In November 2013, Jackson "submitted a note from her physician," which stated that Jackson had "chronic knee pain" and that it was "medically suitable for [her] to have a rest period if needed at any time in the day while working." (*Id.* ¶ 37.) After receiving this note, Kimberly Ann Bremerman, a member of the management team at Infitec, told Jackson that she did not need to walk up and down any stairs, and that she could sit down or rest as needed. (*Id.* ¶¶ 2, 40.)

During her time at Infitec, Jackson met with members of the management team several times and explained that she believed her co-workers "did not like her," (*id.* ¶¶ 2, 35); she "heard certain employees had made comments about her on Facebook," (*id.* ¶ 44); and she felt that she was being harassed and discriminated against, (*id.* ¶¶ 25, 43-44, 55, 57).

One day in March 2014, Jackson "sent home an employee early and suspended him for the following day because he had returned late from a break." (*Id.* ¶ 60.) The parties disagree as to whether Jackson exceeded her authority in disciplining this employee, and whether she violated Infitec's practices and procedures in doing so. (*Id.* ¶ 61; Pl.'s SMF ¶ 61, Dkt. No. 78, Attach. 1.) Afterwards, management met with Jackson again,

and presented her with two memorandums titled: "Changes to your Authority," which dealt with issues that were discussed in the parties' prior meetings, and "Investigation Issues," which "presented additional questions and requests for information for Jackson related to her prior complaints." (Def.'s SMF ¶ 67.) After reading "only part of" the "Changes to your Authority" memorandum, Jackson stated that she disagreed with it. (*Id.* ¶ 68.) She "then got up, left the room, walked back to her work station, gathered her belongings, and left the facility." (*Id.* ¶ 70.) Jackson did not return to work at Infitec. (*Id.*)

**B.   Procedural History**

Jackson commenced this action *pro se*. (Compl., Dkt. No. 1.) On December 7, 2015, the court adopted an Order and Report-Recommendation (R&R), which granted Jackson's application to proceed *in forma pauperis* and found, upon initial review under 28 U.S.C. § 1915(e), that the original complaint appeared to assert a racial discrimination claim under Title VII as well as a disability discrimination claim under the ADA, but recommended dismissal because Jackson named the wrong defendant. (Dkt. No. 6 at 5-7; Dkt. No. 8.) The court granted Jackson leave to file an amended complaint. (Dkt. No. 8 at 3.)

4

On January 4, 2017, Jackson, still *pro se*, filed the amended complaint, which is now the operative pleading. (Am. Compl.) In doing so, Jackson narrowed her pleadings to allege only that "[d]efendant's conduct is discriminatory with respect to . . . disability" and "[t]he conduct complained of in this action involves . . . [r]etaliation." (*Compare* Am. Compl. at 2, *with* Compl. at 2.) She explained that, after speaking with an attorney, she had come to the conclusion that her case "wasn't about [r]ace . . . it was more about my disability discrimination." (Am. Compl. at 3.)

Infitec then moved for dismissal, and, in the alternative, for a more definite statement. (Dkt. No. 24.) On May 23, 2016, an attorney filed a notice of appearance on Jackson's behalf and later filed a response to Infitec's motion. (Dkt. Nos. 31, 35-36.) In her legal memoranda, Jackson expressed a willingness to further amend her pleading, but did not do so. (Dkt. No. 35 at 5.)

After the court denied Infitec's motion, (Dkt. No. 44), Infitec filed a motion for summary judgment, (Dkt. No. 63). In its Summary Order denying the motion for summary judgment, with leave to renew, the court clarified that the only claims articulated in the amended complaint are:

5

(1) an ADA disability discrimination claim; (2) an ADA retaliation claim; and (3) a Title VII retaliation claim.  (Dkt. No. 73 at 4.)  Now pending is Infitec's motion for summary judgment, (Dkt. No. 74), and Jackson's motion for leave to amend, (Dkt. No. 79).

### III.  Standards of Review

#### A.  Leave to Amend

"'[W]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'"  *Laskowski v. Liberty Mut. Fire Ins. Co.*, No. 5:11-cv-340, 2013 WL 5127039, at *2 n.3 (N.D.N.Y. Sept. 12, 2013) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)).  "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'"  *Id.* at *2 (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010)).  Further, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline."

6

*Enzymotec Ltd.*, 754 F. Supp. 2d at 536 (internal quotation marks and citation omitted).

## B. Summary Judgment

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

## A. Jackson's Motion for Leave to Amend

Jackson seeks leave to amend to add new claims, all of which appear to assert race discrimination, brought pursuant to Title VII, the New York Human Rights Law, and New York State common law. (Dkt. No. 79, Attach. 4.) Citing only to Fed. R. Civ. P. 15 in her moving papers, Jackson maintains that leave to amend should be granted because her initial complaint included a race claim; the amended complaint, which is now the operative complaint, was filed *pro se*, and the failure to include a race discrimination claim "seems to have been based upon what could only be considered a misunderstanding of a conversation she had with an

7

attorney"; and there would be no prejudice to Infitec.  (Dkt. No. 79, Attach. 3 at 20-22.)  In response, Infitec argues that Jackson's motion for leave to amend should not be granted, because she has failed to demonstrate good cause; it would be highly prejudicial to Infitec; and it would cause a significant delay in the litigation.  (Dkt. No. 81 at 7-8.)  The court agrees with Infitec.

Here, Jackson has failed to comply with two procedural requirements in seeking leave to amend.  First, Jackson runs afoul of the Local Rules, which require a motion to amend to "set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means."  N.D.N.Y. L.R. 7.1(a)(4).  A review of the proposed second amended complaint reveals that Jackson has made alterations without specifically identifying them.  (Dkt. No. 79, Attach. 4.)

Second, Jackson has failed to comply with Fed. R. Civ. P. 16(b).  Pursuant to the Rule 16 Scheduling Order, the deadline for amending the pleadings was June 15, 2018, (Dkt. No. 48), and Jackson did not file her motion until November 26, 2019, (Dkt. No. 79).  Despite the court's

directive in its Summary Order that any application for leave to amend be made pursuant to Fed. R. Civ. P. 16(b)(4), (Dkt. No. 73 at 4), Jackson has not demonstrated, or even alleged, good cause to modify the court's scheduling order and allow an amendment after the deadline set by the court.  *See Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("[W]hen a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, that party must satisfy the good cause requirement of Fed. R. Civ. P. 16(b)—despite the lenient standard for amendment under Fed. R. Civ. P. 15(a)—before leave to amend may be granted.").  Further, Jackson had expressed a willingness to amend back in June 2016, (Dkt. No. 35 at 4), but it was only after the parties engaged in discovery, and after Infitec filed its second motion for summary judgment, that Jackson filed for leave to amend.  *See Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (denying the plaintiff's motion to amend and noting the plaintiff's lack of diligence where, "despite having sufficient notice of the relevant facts by April, [the plaintiff] inexplicably failed to file his motion to amend for another two months," during which time "the parties completed discovery and the defendants moved for summary judgment").  Indeed, good cause

9

for amendment is plainly lacking at this late juncture.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

For all of these reasons, Jackson's motion for leave to amend is denied.

**B.    Infitec's Motion for Summary Judgment**

*1.    ADA Discrimination Claim*

Infitec argues that Jackson's ADA discrimination claim fails because her allegations are entirely conclusory; she did not suffer an adverse employment action; and she has offered no evidence to support an inference of unlawful discrimination.  (Dkt. No. 74, Attach. 23 at 11-17.)  In response, Jackson makes no cogent argument, and instead simply asserts that "it was medically determined that [she] suffered an impairment to her knee," and Infitec was aware of her knee issues while she was working there.  (Dkt. No. 78 at 10-11.)  The court agrees with Infitec that Jackson's conclusory allegations fail to establish a prima facie case of disability discrimination, and the claim is otherwise dismissed as

unsupported by the record.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination claims brought pursuant to the ADA are analyzed under the three-part burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 402 (S.D.N.Y. 2013). In the first step—the only step Infitec meaningfully challenges in its briefing, (Dkt. No. 74, Attach. 23 at 11-17),—a plaintiff must establish a prima facie case of disability discrimination by showing that:

> (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered adverse employment action; and (5) the adverse action was imposed because of her disability.

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citation

11

omitted).

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'" *Id.* (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "Examples of such materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Caskey v. County of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (quoting *Sanders*, 361 F.3d at 755). "An adverse employment action may also take the form of a constructive discharge, which occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007)).

Here, Jackson fails to plausibly allege that she suffered an adverse employment action. Although it is unclear which factual allegations Jackson relies on to support her disability discrimination claim, the extent

12

of her allegations consist of the following: she "was called in[to] the office for various reasons, until [she] felt [she] was forced into quitting"; she was "reprimanded for the way [she] handle[d] a [two] day suspension with a[n] employee"; Infitec "wanted [Jackson] to sign a paper, and [she] refused and . . . left the company"; and she "was told on many occasion[s], when [she] complained of leg pain," that she was paid to "walk around," and she "felt [that] they constantly would remind [her] of [her having gone to the doctors] . . . until the day [she] left the company." (Am. Compl. at 4.) None of these conclusory allegations amount to adverse employment actions because they do not constitute materially adverse changes in the terms and conditions of her employment.

To the extent that Jackson alleges that she felt she was "forced into quitting," (*id.*), the amended complaint is devoid of any factual detail as to the circumstances or nature of her leaving Infitec, and thus fails to demonstrate a constructive discharge. *See Buczakowski v. Crouse Health Hosp., Inc.*, No. 5:18-CV-330, 2019 WL 6330206, at *8 (N.D.N.Y. Nov. 26, 2019) ("A plaintiff must plausibly allege that the discharge occurred in circumstances giving rise to an inference of discrimination based on a protected characteristic." (internal quotation marks, alterations,

13

and citation omitted)); *Valleriani v. Route 390 Nissan LLC*, 41 F. Supp. 3d 307, 320 (W.D.N.Y. 2014) ("[A] [p]laintiff must allege that her job had become intolerable to the point that she was forced into an involuntary resignation.  A perception that the employee is being unfairly criticized, or exposure to difficult or unpleasant conditions does not rise to the level of a constructive discharge." (internal quotation marks, alterations, and citations omitted)).  Further, even if Jackson's bald assertions were enough to establish a prima facie case, Jackson has identified no evidence in the record to suggest that she suffered an adverse employment action.

Accordingly, Infitec's motion for summary judgment is granted as to Jackson's disability discrimination claim.

*2.   ADA and Title VII Retaliation Claims*

As to Jackson's ADA and Title VII retaliation claims, Infitec again argues that these claims fail because Jackson, among other things, did not suffer an adverse employment action.  (Dkt. No. 74, Attach. 23 at 22-24.)  In response, Jackson maintains that she "made several complaints about the discrimination she endured"; she "was retaliated against for making complaints"; she "was constructively discharged, and

14

supervisory duties were removed, and she was disciplined"; and "[w]ithin a few months of receiving written documentation of [her] disability, she was stripped of her supervision duties, which was a demotion, disciplined for doing her job, and was constructively discharged or forced out." (Dkt. No. 78 at 13-14.)

Retaliation claims under the ADA are analyzed "using the same framework employed in Title VII cases." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (citation omitted). "In order to defeat a motion for summary judgment addressed to a claim of retaliation . . . , the plaintiff must first present sufficient evidence to make out a prima facie case." *Id.* (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). To establish a prima facie case of retaliation under the ADA and Title VII, a plaintiff must show:

> [1] that she engaged in protected participation or opposition under [the ADA and Title VII], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Id.* (quoting *Cifra*, 252 F.3d at 216).

15

The scope of actions that may be materially adverse for purposes of anti-retaliation provisions is broader than those actions prohibited by anti-discrimination provisions.  *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (noting that "anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm" (internal quotation marks and citation omitted)).  However, even with this lower standard, as discussed above, Jackson has failed to demonstrate that she suffered an adverse employment action, and there is an utter lack of evidence in the record to support such a finding.

Accordingly, Infitec's motion for summary judgment is granted as to Jackson's claims of retaliation pursuant to the ADA and Title VII.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Jackson's motion for leave to amend (Dkt. No. 79) is **DENIED**; and it is further

**ORDERED** that Infitec's motion for summary judgment (Dkt. No. 74) is **GRANTED**; and it is further

**ORDERED** that Jackson's amended complaint (Dkt. No. 9) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 27, 2020
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge